UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES M. STEVENS,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No. 1:17-cv-495

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*., and Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's federal claims will be dismissed on grounds of failure to state a claim, immunity, and mootness. Plaintiff's state-law claims will be dismissed without prejudice.

**Discussion**

I. <u>Factual allegations</u>

Plaintiff James M. Stevens presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility, though the actions about which he complains occurred while he was housed at the Richard A. Handlon Correctional Facility (MTU). He sues the following Defendants: the MDOC; MDOC Director Heidi Washington; Trinity Services Group (Trinity); MTU Classification Director (unknown) Sage; MTU Correctional Officer (unknown) Griffith; Trinity Food Service Supervisor (unknown) Larow; Trinity Food Service Director (unknown) Larson; and Warden Dwayne Burton.

According to the complaint, Plaintiff is serving a term of life imprisonment, imposed in 2001. He alleges that he is a qualified individual with a disability, arising from his hepatitis C (HCV) and stage-4 liver disease and cirrhosis of the liver. He also suffers from chronic pulmonary obstructive disease (COPD), degenerative joint disease, and mental illness, including bipolar disorder, depression, anxiety, affective disorder, anti-social personality disorder, paranoia, and poly-substance abuse. He alleges that the various conditions affect a number of major life activities.

Plaintiff was treated for mental health conditions with psychoactive medications and therapies between 2007 and early 2015. At that point, Plaintiff asked to be removed from the out-patient mental health program. Soon after, however, Plaintiff asked to be returned to the program, and he began to attend individual and group therapy sessions. He was assigned to Social Worker Ms. Benko.

Plaintiff was charged with two misconducts in September 2015, for possessing alcohol. Plaintiff pleaded guilty to the charges. He also was detained in a psychiatric observation

cell between September 29 and October 9, 2015, because he was a risk to himself and others. When reviewed by the security-classification committee, he explained that he had produced alcohol for sale to make money, as he had no prison job, no access to other funds, and had been denied indigent status. Deputy Warden Braman advised Plaintiff to kite Defendant Classification Director Sage, use Braman's name, and tell Sage that Braman wanted Plaintiff to be placed in a job as soon as possible. Plaintiff did so, but he was not assigned to employment before December 2015. By that time, Plaintiff had become increasingly depressed and anxious, and he spoke to Ms. Benko about the problem several times. In early December 2015, Ms. Benko contacted Defendant Sage, in an attempt to get Plaintiff gainful employment. Benko called Sage, explained the problem, asked for expedited placement, and then put Plaintiff on the phone with Sage. Sage advised Plaintiff that she would place him on a food-service assignment.

On February 22, 2016, at 6:15 a.m., Plaintiff reported to food service for the first time. When he arrived, Defendant Griffith, the Food Service Correctional Officer, told Plaintiff to report to Defendant Food Service Supervisor Larow. Larow questioned Plaintiff about his experience in food service and then issued Plaintiff his "kitchen whites" and told him to get dressed in the bathroom. (Compl., ECF No. 1, PageID.8.) When Plaintiff returned and reported to Larow for further direction, Larow told Plaintiff that he wanted him to work on the food service line, filling prisoner's trays. Plaintiff alleges that he and Larow were 15 to 20 feet away from Defendant Food Service Director Larson. Plaintiff quietly informed Defendant Larow, as follows:

> I'll perform whatever function or duty you direct me to, but I'd really feel a lot more comfortable if I could work in a non-food-handling position [i.e., busing tables, emptying trays, garbage disposal, etc.], because I have Hepatitis C.

(Compl., ECF No. 1, PageID.9.) Defendant Larow responded in a loud voice,

> Hepatitis C! You can't be over here with that! I don't know why they [classification] sent you over here with that! You can just go back to your unit. You're laid in. You don't have to come back. I'll e-mail classification and have you reclassed.

(*Id.*) At that point, Defendant Larson came over. When Defendant Larow explained the situation to Defendant Larson, Larson agreed that Plaintiff could not be in food service and indicated that she would call Plaintiff's unit. She told Plaintiff that he was laid in and told Griffith to take him back because he had hepatitis C. All Defendants allegedly ignored Plaintiff's complaints that they could not dismiss him. Plaintiff complied with the order to return to his cell.

Plaintiff was taken off his work assignment and did not receive another assignment for a few days. He then was assigned to the position of part-time porter, a lower paying job, on February 28, 2016. However, the following day, Plaintiff was ordered to pack up for transfer to LCF, where he is now housed.

Plaintiff alleges that he was terminated from food service in violation of MICH. DEP'T OF CORR., Policy Directive 03.04.120, ¶¶ MM, which provides that prisoners with bloodborne diseases are eligible to work in all areas of the prison, except health services, and are specifically permitted to work in food service, unless they have a cut, sores above the torso, an uncontrolled cough, diarrhea, a runny nose, or a general hygiene problem. *Id.* In addition, he alleges that the actions to fire him from food service constituted discrimination on the basis of his disability, in violation of the ADA and the RA, the Equal Protection Clause, the Due Process Clause, and state law. Further, he complains that Defendants' actions in not assigning him a job and then terminating him from food service resulted in numerous physical and mental problems, including insomnia,

rashes, panic attacks, indigestion, and a worsening of his psychiatric symptoms. He contends that his treatment violated the Eighth Amendment.

He sues the MDOC for its responsibility over both his constitutional and ADA claims. He contends that Defendant Washington, as MDOC director is the policy maker who adopted a policy or custom of privatization, which has resulted in the provision of substandard services, including food services, and the failure to train food-service staff to comply with the constitution and federal and state laws. He alleges that Trinity Food Services failed to ensure that its employees followed MDOC policy and applicable laws. In addition, Plaintiff alleges that all Defendants conspired to violate his rights under the constitution and state law.

For relief, Plaintiff seeks compensatory and punitive damages, together with declaratory and injunctive relief.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Violation of Policy

To the extent that Plaintiff alleges that Defendants Larow and Larson violated prison policy when they removed him from his food-service job and that Defendants Sage, Griffith, and Burton violated their obligations to correct the policy violation, he fails to state a claim. Claims under§ 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Defendant's alleged failure to comply with

an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

B.  Due Process

Plaintiff appears to allege that Defendants violated his right to due process, both by failing to provide him a job assignment and by removing him from his food-service job assignment without providing him a hearing. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Contrary to his assertions, Plaintiff does not have a federally cognizable liberty interest in being assigned to a prison job or work program. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, employment, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"). Because Plaintiff has no liberty interest in a job, he was not deprived

of due process either when he was not assigned to a job for a period of time or when he was terminated from that job. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job). Plaintiff therefore fails to state a due process claim arising from either the lack of prison employment or the termination of his food-service employment.

### C. Eighth Amendment

Plaintiff next appears to argue that Defendant Sage was deliberately indifferent to his serious medical need for employment when she failed to assign him to a job, thereby exacerbating his serious mental health conditions and causing him related physical conditions. He also suggests that Defendants Sage, Griffith, Larow, and Larson were deliberately indifferent to his serious psychological needs when they discharged him from his work assignment or failed to prevent his discharge.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff cannot meet either prong of the Eighth Amendment standard. Although Plaintiff alleges that he suffered mental health conditions that were aggravated by his lack of a job, he cannot demonstrate that loss of his job posed a sufficiently serious risk to his mental health that would have been "obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). Moreover, Plaintiff utterly fails to allege facts that suggest that Sage, Griffith, Larow, and Larson were even aware of his serious psychological needs or that terminating his job would cause him significant physical injury. He therefore cannot demonstrate that they were deliberately indifferent to his serious medical needs. *Cf. McKinley v. Bowlen*, 8 F. App'x 488, 492 (6th Cir. 2001) (holding that the imposition of medical restrictions that prevents a prisoner's assignment to a particular job does not constitute an Eighth Amendment violation).

D. Equal Protection

Plaintiff alleges that he was denied equal protection when Defendants Larow and Larson discharged him from his food-service position on the basis of his HCV status. He also

alleges that Defendant Trinity Services Group had a policy, custom, or practice of firing prisoner employees for their HCV status.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate" and the law is valid if it is "substantially related to a sufficiently important government interest." *Id.* at 440-41. The Supreme Court has definitively held that people with disabilities are not a suspect or quasi-suspect group. *Id.* at 445-46 (mentally impaired); *see also Bd. of Trustees of Univ. of Ala. v. Garett*, 531 U.S. 356, 367-68 (2001) (citing *Cleburne*).

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). The plaintiff bears the burden of demonstrating that the government lacks a rational basis, and he may satisfy this burden either by

negating "'every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" *Id.* (quoting *Warren,* 411 F.3d at 711). The State, conversely, bears no burden of proof; its legislative choice is presumptively valid and "'may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* (quoting *Trihealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 790 (6th Cir. 2005)).

Plaintiff utterly fails to overcome the presumptive validity of Defendants' decision. Indeed, Plaintiff's own statements to Larow demonstrate that Larow and Larson acted reasonably to determine that Plaintiff was unfit to work in food service because of his HCV-positive status. Plaintiff told Larow that he was uncomfortable working in food preparation and service because of his HCV-positive status, presumably because, if he was cut or poked during kitchen or food-service work, a not unlikely possibility, he could contaminate food or surfaces with his blood and risk either inadvertent transmission to others or contamination of large amounts of food, which would need to be destroyed. Defendants rationally could conclude that they did not wish to run those risks. Plaintiff's remark demonstrates that he shared Larow's and Larson's discomfort with such risks. By his own admissions, therefore, Defendants' decision to not let him work with food was rational.

Plaintiff, however, suggests that there were other jobs in food service that he could have performed, such as "busing tables, emptying trays, garbage disposal, etc." (Compl., ECF No. 1, PageID.9.) However, Defendants did not owe a duty under the Equal Protection Clause to accommodate Plaintiff's limitations. *Bd. of Trusteees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367-68 (2001) ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled . . . ."). Plaintiff had no right under the Equal Protection Clause to demand to remain employed in food service when he could not perform all food-service jobs.

Plaintiff therefore fails to allege facts supporting an equal protection claim.

E.  Supervisory Liability

Even had Plaintiff been able to allege a constitutional violation against Defendants Trinity, Larow and/or Larson, he would not state a claim against Defendants Griffith, Sage, Burton, or Washington for permitting those actions. Plaintiff alleges that Defendants Griffith and Sage approved the action of Trinity Employees in firing Plaintiff from his job, because they did nothing to stop it. In addition, Plaintiff appears to assert that Defendants Burton and Washington are liable both because they supervise others and because they allegedly had a policy of preventing HCV-positive personnel from working in food service.

With respect to the alleged policy of Defendants Burton and Washington, Plaintiff's claim is at odds with his own allegations. As he recites in his complaint, MICH. DEP'T OF CORR., Policy Directive 03.04.120 ¶ MM explicitly allows prisoners who are HCV-positive to work in food service jobs, unless they have some otherwise disqualifying conditions. Plaintiff's own allegations undermine his claim that Defendants MDOC and Washington had a policy of discriminating against him.

With respect to Plaintiff's allegations that Defendants Griffith, Sage, Burton and Washington are liable for the actions of the Trinity employees, he fails to state a § 1983 claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates or others under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be

based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, any suggestion that they are liable for failing to answer his kites and grievances also fails. Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants Sage, Griffith, Washington and Burton engaged in any active unconstitutional behavior. Accordingly, he fails to state a constitutional claim against them.

F. Sovereign Immunity for § 1983 Claims

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-

1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

### III. Claims under the ADA & RA

Plaintiff contends that Defendants are liable under Title II of the ADA for discharging him from his food-service job because of his HCV-positive status. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[1] In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability"

---

[1]Similarly, § 504 of the RA provides in pertinent part:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)).

includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).[2]

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). As a result, to the extent that Plaintiff sues any individual in his or her individual capacity, he fails to state a claim. Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). However, a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

The State of Michigan (acting through the MDOC) and the other Defendants in their official capacities are not necessarily immune from suits for money damages under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus*, 591 F.3d at 482. However, it does not abrogate sovereign immunity for conduct that does not violate the Fourteenth Amendment. *Id.*

---

[2] The Court assumes without deciding that Plaintiff is disabled because of his HCV-positive status.

Here, as earlier discussed, Plaintiff fails to allege conduct that violates either the Equal Protection Clause or any other constitutional claim made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *See Georgia*, 546 U.S. at 158-59. The state therefore is entitled to sovereign immunity from Plaintiff's claims for damages. *See Georgia*, 546 U.S. at 159. Plaintiff therefore is not entitled to money damages from the state and the other Defendants acting in their official capacities.

Nevertheless, an official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. In *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), the Supreme Court recognized that the Eleventh Amendment immunity does not bar injunctive relief against a state official. In the instant case, however, Plaintiff has since been transferred to a different prison His claim for declaratory and injunctive relief against Defendants Sage, Griffith, Larow, Larson, and Burton therefore is mooted by his transfer. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Further, Plaintiff's claim for declaratory and injunctive relief under the ADA against the Michigan Department of Corrections and Defendant Washington is moot, given that, as recited in Plaintiff's complaint, those Defendants already have adopted a policy permitting Plaintiff to work in food service as an individual who is HCV-positive. *See* MICH. DEP'T OF CORR., Policy Directive 03.04.120 ¶ MM.

IV.     State Claims

Plaintiff asserts a variety of claims under state law, including breach of the food-service contract and violation of Michigan civil rights statutes. As previously noted, claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar*, 457 U.S. at 924. Section 1983 does not provide redress for a violation of a

state law. *Pyles*, 60 F.3d at 1215. Plaintiff's assertions that Defendants violated state law therefore fail to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed on grounds of failure to state a claim, immunity, and mootness, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state-law claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   June 23, 2017                              /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge